1  William A. Isaacson
   Jennifer Milici
2  BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Ave. NW, Suite 800
3  Washington, D.C. 20015
   Telephone: (202) 237-2727
4  Facsimile: (202) 237-6131
   Email: wisaacson@bsfllp.com
5  Email: jmilici@bsfllp.com

6  *Liaison Counsel for Direct Action Plaintiffs*
   *Additional Counsel Listed on Signature Page*

7

8              **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
9                **SAN FRANCISCO DIVISION**

10  In re: CATHODE RAY TUBE (CRT)          Master File No. 3:07-cv-05944-SC (N.D. Cal.)
    ANTITRUST LITIGATION                   MDL No. 1917

11  ─────────────────────────────
    This Document Relates to:               Case No. 11-cv-01656 SC
12                                          Case No. 11-cv-05381 SC
    *Electrograph Systems, Inc., et al. v. Hitachi,*   Case No. 11-cv-05502 SC
13  *Ltd., et al.*, No. 11-cv-01656         Case No. 11-cv-05513 SC
                                            Case No. 11-cv-05514 SC
    *Stoebner, et al. v. LG Electronics, et al.*, No.   Case No. 11-cv-06275 SC
14  11-cv-05381                             Case No. 11-cv-06276 SC
                                            Case No. 11-cv-06396 SC
15  *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502  Case No. 11-cv-06397 SC
                                            Case No. 12-cv-02648 SC
16  *Best Buy Co., et al. v. Hitachi, Ltd., et al.*, No.   Case No. 12-cv-02649 SC
    11-cv-05513
17  *Target Corp., et al. v. Chunghwa Picture*   **DIRECT ACTION PLAINTIFFS'**
    *Tubes, Ltd.*, No. 11-cv-05514          **OBJECTIONS TO REPORT AND**
18                                          **RECOMMENDATIONS REGARDING**
    *Interbond Corporation of America v. Hitachi,*   **DEFENDANTS' JOINT MOTION TO**
19  *et al.*, No. 11-cv-06275               **DISMISS DIRECT ACTION**
                                            **COMPLAINTS**
    *Office Depot, Inc. v. Hitachi Ltd., et al.*, No.
20  11-cv-06276
                                            **Judge: Hon. Samuel P. Conti**
21  *CompuCom Systems, Inc. v. Hitachi, Ltd., et*   **Court: Courtroom 1, 17th Floor**
    *al.*, No. 11-cv-06396                  **Date: TBD**
22                                          **Time: TBD**
    *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*,
23  No. 11-cv-06397

    *P.C. Richard and Son Long Island Corp., et al.*
24  *v. Hitachi, Ltd., et al.*, No. 12-cv-02648

25  *Schultze Agency Services, LLC, et al. v.*
    *Hitachi, Ltd., et al.*, No. 12-cv-02649

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

STANDARD OF REVIEW .................................................................................. 3

ARGUMENT ........................................................................................................ 4

I.    The DAPs Have Standing to Pursue Their State Law Claims.............................. 4

        A.    *Associated General Contractors* is Inapplicable to the DAPs' Claims Under Arizona, Illinois and Michigan Law ................................ 5

        B.    The DAPs' Claims Satisfy *Associated General Contractors* .................... 7

                1.    The DAPs Have Adequately Alleged Antitrust Injury ....................... 9

                2.    The DAPs' Injuries Are Direct ........................................................ 13

                3.    The DAPs' Injuries Are Not Speculative........................................... 14

                4.    There Is Not A Risk of Duplicative Recovery and An Apportionment of Damages Will Not be Unduly Complex.............. 14

II.    The DAPs Have Stated Claims Under the Massachusetts Consumer Protection Act ................................................................................................. 15

III.    The DAPs Have Stated Claims Under the Washington Consumer Protection Act ................................................................................................. 19

IV.    The Polaroid Plaintiffs Have Adequately Alleged Unjust Enrichment Claims Under Minnesota and California Law ................................................................ 19

V.    Circuit City Has Adequately Alleged Restitution And Unjust Enrichment Claims Under California Law........................................................................... 20

VI.   Recent Decisions By Judges in this District Have Allowed Indirect Purchaser Claims Under Nebraska and Nevada Law For Purchases That Predate The So-Called *Illinois Brick* Repealer Statutes in these States ................................. 22

        A.    The DAPs Have Standing To Bring Claims Under Nebraska Law For Purchases That Predate Nebraska's *Illinois Brick* Repealer Statute... 23

        B.    The DAPs Have Standing To Bring Claims Under Nevada Law For Purchases That Predate Nevada's *Illinois Brick* Statute ........................... 24

CONCLUSION ................................................................................................. 26

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3

4

*Am. Timber & Trading Co. v. First Nat'l Bank,*
    690 F.2d 781 (9th Cir.1982)................................................................................ 20

5

*American Ad Mgmt.,* 190 F.3d at 1055 .......................................................... 9, 13, 14

*Arthur v. Microsoft Corp.,*
    267 Neb. 586 (Neb. 2004) ........................................................................... 23, 24

6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................... 3

7

8

*Associated General Contractors v. California State Council of Carpenters,*
    459 U.S. 519 (1983)....................................................................................... 1, 4

9

*Baker v. Jewel Food Stores, Inc.,*
    823 N.E.2d 93 (Ill. App. Ct. 2005) ...................................................................... 7

10

11

*Barker v. Riverside Cnty. Office of Ed.,*
    584 F.3d 821 (9th Cir. 2009)............................................................................... 4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)....................................................................................... 3, 4

12

13

*Bhan v. NME Hosp., Inc.,*
    772 F.2d 1467 n.3 (9th Cir. 1985)....................................................................... 9

14

*Blue Shield of Va. v. McCready,*
    457 U.S. 465, 483-84 ....................................................................................... 11

15

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009)............................................................................... 4

16

17

*Broam v. Bogan,*
    320 F.3d 1023 (9th Cir. 2003)............................................................................. 3

18

*Bunker's Glass Co. v. Pilkington PLC,*
    75 P.3d 99 (Ariz. 2003)....................................................................................... 6

19

*Burns ex rel. Office of Public Guardian v. Hale & Dorr LLP,*
    445 F. Supp. 2d 94 (D. Mass. 2006) ................................................................ 17

20

21

*Butler v. Deutsche Bank Trust Co. Americas,*
    2012 WL 3518560 (D. Mass. August 14, 2012) ................................................ 16

22

*D.R. Ward Constr. Co. v. Rohm & Haas Co.,*
    470 F. Supp. 2d 485 (E.D. Pa. 2006) .............................................................. 4, 6

23

*Doe I v. Wal-Mart Stores, Inc.,*
    572 F.3d 677 (9th Cir. 2009)............................................................................. 21

24

*Erickson v. Pardus,*
    551 U.S. 89 (2007)............................................................................................. 3

25

26

*First Nationwide Sav. v. Perry,*
    11 Cal. App. 4th 1657 (1992)............................................................................. 21

27

*Friedman v. Microsoft Corp.,*
    141 P.3d 824, 828 (Ariz. Ct. App. 2006) ........................................................... 5

28

DIRECT ACTION PLAINTIFFS' OBJECTIONS TO
REPORT AND RECOMMENDATIONS REGARDING
DEFENDANTS' JOINT MOTION TO DISMISS

iii

Master File No. 3:07-5944-SC
MDL No. 1917

*Fontana v. Haskin,*
262 F.3d 871 (9th Cir. 2001) ...................................................................................... 20

*Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.,*
642 N.E.2d 470 (Ill. 1994) ........................................................................................... 7

*Harris Assoc. v. Clark County School District,*
81 P.3d 532 (Nev. 2003) ............................................................................................ 25

*In re CRT Antitrust Litig.,*
738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................................... passim

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
516 F. Supp. 2d 1072 (N.D. Cal. 2008) ............................................................... passim

*In re Easysaver Rewards Litig.,*
737 F. Supp. 2d 1159 (S.D. Cal. 2010) ..................................................................... 21

*In re Flash Memory Antitrust Litig.,*
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................................................... passim

*In re G-Fees Antitrust Litig.,*
584 F. Supp. 2d 26 (D.D.C. 2008) ............................................................................... 7

*In re Graphics Processing Units Litig.,*
527 F. Supp. 2d 1011, 1025-26 (N.D. Cal. 2007) ............................................. 5, 7, 12

*In re Graphics Processing Units Antitrust Litig.,*
540 F. Supp. 2d 1085 (N.D. Cal. 2007) ............................................................... passim

*In re Intel Corp. Microprocessor Antitrust Litig.,*
496 F. Supp. 2d 404 (D. Del. 2007) ............................................................................. 5

*In re Microsoft Corp. Antitrust Litig.,*
2005 WL 1398643 (D. Md. Jun 10, 2005) .................................................................... 8

*In re Mitchell,* 476 B.R. 33 (Bankr. Mass. 2012) ........................................................... 16

*In re Optical Disk Drive Antitrust Litig.,*
No. 3:10–md–2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ..................... 4, 7, 10

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
No. 07-1819 CF, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ............................. 23, 26

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
586 F. Supp. 2d 1109, 1123 (N.D. Cal. 2008) .................................................... passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
No. M07-1827 SI, 2011 WL 3738985 (N.D. Cal. Aug. 24, 2011) .......................... 23, 24

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
No. M07-1827 SI, 2011 WL 4345435 (N.D. Cal., Sept. 15, 2011) ............................ 22

*In re TFT–LCD (Flat Panel) Antitrust Litig.,*
No. M07-1827 SI, 2011 WL 6148677 (N.D. Cal. Dec. 7, 2011) ................................ 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
(Flat Panel) 2012 WL 4808447 (N.D. Cal. Oct. 9, 2012) ................................. 2, 11, 12

*Int'l Game Technology, Inc. v. Second Judicial Dist. Court ex rel. County of
Washoe,* 179 P.3d 556 (Nev. 2008) ........................................................................... 25

*Kanamaru v. Holyoke Mut. Ins. Co.*,
   72 Mass. App. Ct. 396, 892 N.E.2d 759 (2008)...................................................................... 18

*Kanne v. Visa U.S.A. Inc.*,
   723 N.W.2d 293 (Neb. 2006)................................................................................................ 24

*Keilholtz v. Superior Fireplace Co.*,
   2009 WL 839076 –5 (N.D. Cal March 30, 2009) ............................................................. 21, 22

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (Ct. App. 2000)................................................................................... 22

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009)................................................................................................... 3

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (Ct. App. 2004)................................................................................. 21

*McKensi v. Bank of Am., N.A.*,
   No. 09-cv-11940, 2010 WL 3781841 (D. Mass. Sept. 22, 2010) ........................................ 17

*Munoz v. MacMillan*,
   195 Cal. App. 4th 648 (Ct. App. 2011)................................................................................. 21

*New York Citizens Committee on Cable TV v. Manhattan Cable TV, Inc.*,
   651 F. Supp. 802 (S.D.N.Y. 1986)........................................................................................... 8

*Nordberg v. Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ................................................................................. 21

*Novell, Inc. v. Microsoft Corp.*,
   505 F.3d 302 (4th Cir. 2007).................................................................................................... 8

*Paisley v. GMAC Mortg., LLC*,
   No. PLCV201001077B, 2011 WL 1663092 (Mass. Super. Feb. 25, 2011) ......................... 16

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (Ct. App. 2008)............................................................................... 22

*Pooler v. R.J. Reynolds Tobacco Co.*,
   No. CV00-02674, 2001 WL 403167 (Nev.Dist.Ct.).............................................................. 25

*Powell v. Ocwen Loan Servicing, LLC*,
   No. 2010-2069-D, 2012 WL 345665 (Mass. Super. Ct. January 04, 2012) ................... 17, 19

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*,
   711 F.2d 989 (11th Cir. 1983).................................................................................................. 3

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
   808 F.Supp. 1464 (D. Nev. 1992)......................................................................................... 26

*Rescuecome Corp. v. Google, Inc.*,
   562 F.3d 123 (2d Cir. 2009)..................................................................................................... 4

*Ghirardo v. Antonioli.*,
   14 Cal. 4th 39 (Cal. 1996)...................................................................................................... 21

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
   561 F.3d 1004 (9th Cir. 2009).................................................................................................. 3

*Williams v. Perrault*,
   82 Mass. App. Ct. 1117, 976 N.E.2d 214 (Table) (2012)..................................................... 16

*Yellow Pages Cost Consultants, Inc. v. GTE Directories Corp.*,
   951 F.2d 1158 (9th Cir. 1991)................................................................................................ 13

**STATUTES**

M.G.L.A. 93A, § 9(3) ................................................................................................. 16, 17

Neb. Rev. Stat. §§ 59-1603, 59-1604, 59-1609 ....................................................... 23, 24

Neb. Rev. Stat. §59-821 (2000) ...................................................................................... 23

Nev. Rev. Stat. Ann. § 598A.210(2) ............................................................................... 25

Nev. Rev. Stat. Ann. §§598A.010, 598A.210................................................................. 25

**RULES**

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 3, 20

Rule 8 ............................................................................................................................... 3

Rule 8 and Rule 12(b)(6)................................................................................................ 20

Pursuant to the Stipulation and Order entered by this Court [Dkt. No. 1666] (May 9, 2013), the Direct Action Plaintiffs ("DAPs") submit the following Objections to the Special Master's Report and Recommendations Regarding Defendants' Motions to Dismiss Direct Action Complaints [Dkt. No. 1664] (May 2, 2013) ("R&R").

## INTRODUCTION

The Special Master's R&R contains a number of fundamental legal and factual errors with respect to the DAPs' state law, indirect purchaser claims. The R&R misapplies this Court's prior order on Defendants' motion to dismiss the Indirect Purchaser Plaintiffs' ("IPPs") state law claims in this litigation, and thus is in direct conflict with certain portions of that order. In addition, the R&R conflicts with the great weight of authority in the Northern District of California (and elsewhere) that correctly applies the relevant precedent to deny motions to dismiss in factually indistinguishable cases. As such, if it were allowed to stand, the Special Master's R&R would create inconsistent rulings not only in this district, but in this very litigation.

First and foremost, the Special Master erred in recommending the dismissal of the DAPs' California, Washington, Arizona, Michigan and Illinois claims pursuant to the standing test set forth in *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519 (1983) ("*AGC*"). This Court has already ruled that *AGC* does not apply to Arizona and Michigan claims, *In re CRT Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023 (N.D. Cal. 2010), and likewise there has been no clear directive from the highest court in Illinois that *AGC* should apply to determine standing. Thus, under this Court's prior ruling, *AGC* should not be applied to the DAPs' Arizona, Michigan and Illinois claims.

In addition, under this Court's prior ruling, even if *AGC* were applied to all of the DAPs' claims, those claims satisfy the *AGC* standard. Indeed, the DAPs' standing allegations are essentially identical to those in the IPP complaint, which this Court found sufficient to deny Defendants' motion to dismiss. *Id.* at 1023-24. The Special Master's recommends a different result here, asserting that the Court's decision in the IPP action relied on allegations that

Defendants conspired to fix the prices of both CRTs *and* CRT Products, whereas the DAPs do not allege a conspiracy to fix the prices of CRT Products. R&R at 10-11. This assertion is incorrect. The Court's analysis in the IPP action did not rely on allegations that the CRT products the IPPs purchased were themselves price-fixed. Rather, the Court's antitrust standing analysis was based on allegations that, among other things, the markets for CRTs and CRT products were "inextricably linked." *CRT*, 738 F. Supp. 2d at 1023-24. That conclusion is directly applicable here.

Moreover, multiple other judges in this district, handling price fixing cases that are factually indistinguishable from this case, have all found allegations of inextricably linked and intertwined markets sufficient to satisfy the *AGC* standard. The plaintiffs in those cases, as in this case, alleged a conspiracy to fix the price of the component product and not the finished product. *See In re TFT-LCD Antitrust Litig.*, No. M 07–1827 SI, 2012 WL 4808447, at *2 (N.D. Cal. Oct. 9, 2012) ("*LCD II*"); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1154 (N.D. Cal. 2009); *see also In re Graphics Processing Units Antitrust Litig.,* 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007) ("*GPU II*").

Moreover, the Special Master has acknowledged that he only considered one of the five *AGC* factors, rather than conducting the requisite balancing of all five factors. R&R at 11. Each of the remaining factors favors standing, given that the DAPs have also alleged, among other things, that CRTs are discrete physical objects whose prices are traceable through the distribution chain from Defendants to the DAPs, and that the overcharges on the CRTs were passed on to the DAPs in the prices they paid for CRT Products. For all of the above reasons, the Special Master's *AGC* recommendation cannot stand.

The Specal Master has also recommended the dismissal of a variety of other DAP-specific claims under particular states' laws, including (i) certain DAPs' Massachusetts Consumer Protection Act claims, based on an asserted failure to satisfy a statutory requirement that they send a pre-complaint demand letter to the Defendants; (ii) Costco's Washington Consumer Protection Act claim; (iii) Polaroid's unjust enrichment claim, based on an asserted failure to identify the particular state laws it is invoking for its claim; (iv) Circuit City's unjust

enrichment and restitution claims under California law; and (v) certain DAPs' claims under Nebraska and Nevada law based on purchases made before the repealer statutes in those states were enacted. As set forth in detail below, the Special Master's recommendations in each of these instances contradict relevant, settled law and, in certain instances, also misstate the relevant facts.

## STANDARD OF REVIEW

Orders by the Special Master on motions to dismiss necessarily involve only issues of law and are subject to *de novo* review by this Court. *See In re CRT*, 738 F. Supp. 2d at 1016. To survive a motion to dismiss, Plaintiffs are only required to plead facts that plausibly suggest the existence of a conspiracy. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "'Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.'" *In re CRT*, 738 F. Supp. 2d at 1017 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted)). Indeed, motions to dismiss for failure to state a claim "rarely" will be granted "in an antitrust suit where proof and details of the alleged conspiracy are largely in the hands of the alleged co-conspirators." *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983). Courts view Rule 12(b)(6) motions with "disfavor" because of the lesser role pleadings play in federal practice and the liberal policy regarding amendment. *See, e.g.*, *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (Rule 12(b)(6) dismissal with prejudice proper only in "extraordinary" cases); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (Rule 12(b)(6) motion "viewed with disfavor and rarely granted") (quotation omitted).

Thus, "[t]o successfully state a claim under §1 of the Sherman Act, a plaintiff need only meet the notice pleading standard articulated in Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 561 F.3d 1004, 1009 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Rule 8 does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 667-78 (2009). Under *Twombly*'s construction of Rule 8, a

1    plaintiff merely has to "nudge[] [its] claims . . . 'across the line from conceivable to plausible.'"

2    550 U.S. at 547.

3        Subject to the requirement that the complaint show a "plausible" claim for relief, the

4    court must accept as true all material factual allegations in the complaint, draw inferences from

5    those allegations in the light most favorable to plaintiff, and construe the complaint liberally.

6    *See Barker v. Riverside Cnty. Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009); *Braden v. Wal-*

7    *Mart Stores, Inc.*, 588 F.3d 585, 595-96 (8th Cir. 2009); *Rescuecome Corp. v. Google, Inc.*, 562

8    F.3d 123, 127 (2d Cir. 2009).

9                                      **ARGUMENT**

10   **I.    THE DAPS HAVE STANDING TO PURSUE THEIR STATE LAW CLAIMS**

11       The Special Master's recommendation that this Court dismiss the DAPs' claims under the

12   laws of California, Washington, Arizona, Illinois and Michigan pursuant to *Associated General*

13   *Contractors v. California State Council of Carpenters,* 459 U.S. 519 (1983) ("*AGC*") is

14   fundamentally flawed.[1]  Indeed, other than *In re Dynamic Random Access Memory (DRAM)*

15   *Antitrust Litig.,* 516 F. Supp. 2d 1072 (N.D. Cal. 2008) ("*DRAM I*"), and 536 F. Supp. 2d 1129

16   (N.D. Cal. 2008) ("*DRAM II*"), upon which the Special Master relies, every court in this district

17   (including this Court) to consider the application of *AGC* to state law indirect purchaser claims

18   has found it inappropriate to apply federal standing requirements without a clear directive from

19   the state's legislature or highest court.  And where there is such a directive, these courts have

20   found that the *AGC* factors weigh in favor of antitrust standing for indirect purchasers of a price-

21   fixed component.[2]

22   _____

23   [1] As the Special Master noted, Defendants did not move to dismiss the DAPs' *federal* claims
     under *AGC*, R&R at 11, so those claims are not at issue here.

24   [2] *See, e.g., CRT*, 738 F. Supp. 2d at 1023-25; *In re Optical Disk Drive Antitrust Litig.*, No. 3:10–
     md–2143 RS, 2011 WL 3894376, at *11-*12 (N.D. Cal. Aug. 3, 2011); *Flash Memory*, 643

25   F.Supp.2d. at 1151-56; *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F. Supp. 2d 1109, 1123
     (N.D. Cal. 2008) ("*LCD I*"); *GPU II,* 540 F. Supp. 2d at 1097; *In re Graphics Processing units*

26   *Antitrust Litig.,* 527 F. Supp. 2d 1011, 1025-26 (N.D. Cal. 2007) ("*GPU I*").  Federal courts
     outside of this district have also rejected the application of *AGC* and have found that indirect

27   purchasers of components have antitrust standing.  *See, e.g., D.R. Ward Constr. Co. v. Rohm &*
     *Haas Co.,* 470 F. Supp. 2d 485, 494-95 (E.D. Pa. 2006) ("the standing requirements of the [state

28   antitrust laws] should be the guide for determining whether prudential considerations permit a
     plaintiff to sue under these statutes, as opposed to those requirements engrafted by federal case

The Special Master's recommendation thus conflicts with the weight of authority in this district and elsewhere, as well as this Court's prior decision in this very litigation. *See CRT*, 738 F. Supp. 2d at 1023-24 (denying defendants' motions to dismiss the IPPs' state law claims on *AGC* grounds).   In denying Defendants' motion to dismiss the IPPs' complaint, this Court rejected the very same arguments that the Special Master now recommends that it should accept. There is absolutely no reason, either legal or factual, for the Court to depart from its ruling in the IPP action.   Indeed, if allowed to stand, the Special Master's recommendation will create inconsistent rulings in this district and this litigation.

The Special Master's recommendation regarding *AGC* standing suffers from at least three fundamental and reversible errors.  First, the Special Master erred in finding that *AGC* applies to the DAPs' Arizona, Illinois and Michigan claims because there is no "clear directive from those states' legislatures or highest courts" to do so.  *LCD I,* 586 F. Supp. 2d at 1123.  Second, the Special Master improperly found that the DAPs have not adequately alleged antitrust injury, relying on an overly narrow definition of the "relevant market" that has been rejected numerous times, including by this Court in this litigation.  *See CRT,* 738 F. Supp. 2d at 1023-24.  Third, as the Special Master himself acknowledged, he failed to conduct the required *AGC* balancing test and instead improperly based his decision solely on one of the five *AGC* factors.

### A. *AGC* is Inapplicable to the DAPs' Claims Under Arizona, Illinois and Michigan Law.

The Special Master erred in applying *AGC* to the DAPs' Arizona, Illinois and Michigan claims.  R&R at 9-11.  As several courts in this district and elsewhere have held, a federal court may only apply *AGC* to a state law antitrust claim to determine standing if there is a "clear directive" from the state's legislature or highest court to do so.  *See, e.g., LCD I,* 586 F. Supp. 2d at 1123 ("it is inappropriate to broadly apply the *AGC* test to plaintiffs' claims under the repeater

law onto federal antitrust statutes, which do not recognize indirect purchaser claims")*; In re Intel Corp. Microprocessor Antitrust Litig.,* 496 F. Supp. 2d 404, 410 (D. Del. 2007) (rejecting *AGC* arguments similar to those advanced here).  In addition, consistent with the passage of *Illinois Brick* repealer statutes by their state legislatures, state courts have applied their own standing requirements and allowed claims that would fail the Special Master's test.  *See, e.g., Friedman v. Microsoft Corp.,* 141 P.3d 824, 828 (Ariz. Ct. App. 2006) (noting that an Arizona trial court had denied a motion to dismiss for lack of antitrust standing in a case involving plaintiffs who had purchased Microsoft operating system as a component of a computer).

states' laws in the absence of a clear directive from those states' legislatures or highest courts"); *see also GPU I,* 527 F. Supp. 2d at 1026 ("Standing under each state's antitrust statute is a matter of that state's law.  It would be wrong for a district judge, in *ipse dixit* style, to bypass all state legislatures and all state appellate courts and to pronounce a blanket and nationwide revision of all state antitrust laws.").

This Court already has determined that *AGC* does not apply to claims under Arizona and Michigan law.  *CRT*, 738 F. Supp. 2d at 1023 (citing *Flash Memory*, 643 F. Supp. 2d at 1151). There is no reason to depart from that determination here.

In addition to this Court, other courts in this district have also determined that there has been no clear directive from either Arizona or Michigan that requires the application of *AGC* to determine standing.  For example, in *Flash Memory*, Judge Armstrong declined to find that *AGC* applied to, *inter alia*, Arizona and Michigan claims.  *Flash Memory*, 643 F. Supp. 2d at 1152. Judge Armstrong explicitly found that there was no guidance from those states' highest courts, or any other pertinent court decisions that would require the application of *AGC* to Arizona or Michigan claims.  *Id*.  She further found that the existence of harmonization provisions (calling for state statutes to be construed in accordance with federal law) was insufficient to justify the application of *AGC* to state law claims.  *Id*. (declining "to adopt an across-the-board rule that a state's harmonization provision, whether created by statute or common law, is an appropriate means of predicting how a state's highest court would rule regarding the applicability of *AGC* to state law antitrust claims").

Likewise, in *GPU*, Judge Alsup also declined to apply *AGC* to, *inter alia*, Arizona and Michigan claims.  *GPU II*, 540 F. Supp. 2d at 1097.  In arguing that the court should apply *AGC* to those state law claims, the defendants in *GPU* cited to "those states' harmonization provisions and one decision from an intermediate appellate court of [those states] that used the *AGC* test." *Id*.  Judge Alsup rejected this argument because it was "not the same as showing that *AGC* has been adopted as the law of those states."  *Id*.  Indeed, the Arizona Supreme Court has expressly rejected the use of its harmonization statutes as grounds for the application of federal standing requirements in indirect purchaser cases.  *See Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99,

106 (Ariz. 2003) (holding that desired uniformity extends only to the standard of conduct required, not "procedural matters such as who may bring an action for injuries caused by violations of the standard of conduct").[3]

As with Arizona and Michigan, there has been no clear directive from Illinois's highest court that *AGC* should apply to determine standing.  Although Illinois has a harmonization provision, Illinois courts have held that "federal decisions are not binding on our courts" with respect to antitrust claims.  *Baker v. Jewel Food Stores, Inc.*, 823 N.E.2d 93, 101 (Ill. App. Ct. 2005) (quoting *Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.*, 642 N.E.2d 470, 472 (Ill. 1994)).  Thus, Illinois courts "are not required to follow federal antitrust decisions, although [they] may do so if [they] find them persuasive." *Id.* (citation omitted).

The Special Master's reliance upon *DRAM* to find that *AGC* applies to claims under Arizona, Illinois and Michigan law is misplaced.  *DRAM* is an outlier in this district, as demonstrated by other courts' refusal to follow it.[4]  These courts recognized the impropriety of a district court ignoring state legislatures and state courts to broadly apply federal law to state repealer laws.  Even the *DRAM* court recognized that its ruling "[was] not without controversy or uncertainty, given the state of the law on issues raised herein with respect to antitrust injury." *DRAM II*, 536 F. Supp. 2d at 1142.

Therefore, the Special Master should not have recommended the dismissal of the DAPs' claims in Arizona, Illinois and Michigan based upon any of the *AGC* factors because *AGC* simply does not apply to these claims.

## B. The DAPs' Claims Satisfy *Associated General Contractors*.

Regardless of whether *AGC* should be applied to certain of the DAPs' claims, all of the DAPs' claims satisfy the *AGC* standard.  The Special Master's recommendation to the contrary, R&R at 9-11, is wrong as a matter of law and fact.  The allegations in the DAPs' complaints are

---

[3] In *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 38 (D.D.C. 2008), the court found that *Bunker's Glass* "implicitly declined" to apply the *AGC* factors.  *See also D.R. Ward*, 470 F. Supp. 2d at 497-98.

[4] *See Optical Disk Drive*, 2011 WL 3894376, at *12; *LCD I*, 586 F. Supp. 2d at 1122-23; *Flash Memory*, 643 F. Supp. 2d at 1153; *GPU I*, 527 F. Supp. 2d at 1026.

more than sufficient and the *AGC* factors weigh heavily in the DAPs' favor.  Indeed, the DAPs'

allegations mirror those in the IPPs' complaint, which this Court held were sufficient under *AGC*

in light of clear precedent in the Northern District of California and elsewhere.  Here, again, this

issue is well-settled and there is no principled reason for the Court to depart from its ruling in the

IPP action.

As this Court has recognized, courts consider the following five factors when deciding

whether a plaintiff has antitrust standing,: "(1) the nature of the plaintiff's alleged injury; that is,

whether it was the type the antitrust laws were intended to forestall; (2) the directness of the

injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the

complexity in apportioning damages."  *CRT*, 738 F. Supp. 2d at 1023 (citing *AGC*, 459 U.S. at

535-44).

The Special Master erred when he found that the DAPs had not satisfied the first *AGC*

factor.  As discussed below, the DAPs have pled, *inter alia*, that the markets for CRTs and CRT

Products are inextricably linked and intertwined, which is more than sufficient at the pleading

stage to demonstrate that their purchases of CRT Products resulted in antitrust injury.  Indeed,

this Court has already held as much in the IPP action.

In addition to erring in his analysis of the first *AGC* factor, the Special Master failed to

consider the remaining *AGC* factors at all.   In so doing, the Special Master is essentially

recommending that the Court adopt a bright-line rule that direct participation in the same market

as defendants is required for antitrust standing.  This bright-line rule has been flatly rejected by

the majority of courts to consider it.[5]  As the Ninth Circuit has held: "To conclude that there is

---

[5] *See, e.g., Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 311 (4th Cir. 2007) (rejecting "a bright-line rule that only consumers or competitors in the relevant market have antitrust standing" because "the Supreme Court has rejected the utility of the very type of bright-line approach on which [defendant] seeks to rely."); *American Ad. Mgmt., Inc., v. Gen. Tel. Co. of Cal.,* 190 F.3d 1051, 1057-58 (9th Cir. 1999) ("The Supreme Court has never imposed a 'consumer or competitor' test but has instead held that the antitrust laws are not so limited.  The Supreme Court's only suggestion of such a restriction is a passing comment in *Associated General* that the plaintiff union was 'neither a consumer nor a competitor' in the relevant market.  The Court did not find that fact in any way dispositive, however. . . ."); *New York Citizens Committee on Cable TV v. Manhattan Cable TV, Inc.*, 651 F. Supp. 802, 811 (S.D.N.Y. 1986) ("The fact that the plaintiff is not a participant in the program-operators market does not deny it standing, where an impact on prices paid by the ultimate consumer is clearly foreseeable."); *In re Microsoft Corp. Antitrust Litig.*, 2005 WL 1398643, at *2 (D. Md. Jun 10, 2005) (rejecting argument that there is

antitrust standing, a court need not find in favor of the plaintiff on each factor." *American Ad Mgmt.*, 190 F.3d at 1055.  Rather, courts are to balance the factors, "giving great weight to the nature of the plaintiff's alleged injury." *Id.*   Notably, the Supreme Court did not hold "that a plaintiff must satisfy all of the *Associated General Contractors* factors, or indeed, any particular factor." *Bhan v. NME Hosp., Inc.*, 772 F.2d 1467, 1470 n.3 (9th Cir. 1985).  Regardless, as discussed below, the DAPs have satisfied all of the *AGC* factors.

### 1. The DAPs Have Adequately Alleged Antitrust Injury.

In their motion to dismiss the IPPs' complaint, Defendants argued that the IPPs had not alleged that they participated in the same market as Defendants and, as such, they had not satisfied the first *AGC* factor – *i.e.,* adequately alleging that their injury is the type the antitrust laws were intended to forestall.  This Court rejected that argument and held that the allegations in the IPPs' complaint satisfied not only the first *AGC* factor, but the entire *AGC* test:

> [T]he Indirect Complaint alleges that Plaintiffs paid "higher prices for CRT Products than they would have paid in the absence of Defendants' conspiracy."  It alleges that the "price of CRT Products is directly correlated to the price of CRTs." It alleges that the "market for CRTs and the market for CRT Products are . . . inextricably linked and cannot be considered separately."   Indirect Purchaser Plaintiffs allege that Defendants monitored the prices of televisions and computer monitors in order to police their price fixing agreement related to CRTs.  They point out that CRTs account for approximately sixty per cent of the cost of manufacturing a computer monitor, and a slightly smaller percentage of the cost of manufacturing a television, and as such it is easier to determine how much money was being passed through to purchasers of the finished products.  CRTs are discrete components that can easily be traced.  ***These allegations are sufficient to find the injury alleged in the Indirect Complaint is the kind antitrust laws were designed to rectify.***

*CRT*, 738 F. Supp. 2d at 1023-24 (emphasis added) (citations omitted).

Here, the DAPs have made virtually identical allegations, which compel the same result.[6]

These allegations include the following:

---

a "black-letter rule that only competitors or consumers in a relevant market have standing to sue for harm caused by anti-competitive behavior in that market," and holding that "[t]he Supreme Court has not established a litmus test for antitrust standing based upon a plaintiff's status").

[6] *Compare CRT*, 738 F. Supp. 2d at 1023-24 *with, e.g.,* Electrograph Compl. (No. 11-cv-01656 (N.D. Cal.)) [Dkt. No. 1] ¶¶ 95-99, 222-229; CompuCom Compl. (No. 11-cv-06396 (N.D. Cal.)) [Dkt. No. 1] ¶¶ 85-89, 208-215; Costco Compl. (No. 11-cv-06397-SC (N.D. Cal.)) [Dkt. No. 1] ¶¶ 69-70, 108, 157-158; Office Depot Compl. (No. 11-cv-06276-SC (N.D. Cal.)) [Dkt No. 1] ¶¶ 84-88, 207-214; P.C. Richard Compl. (No. 12-cv-02648 (N.D. Cal.)) [Dkt. No. 1] ¶¶ 89-93, 212-219; Circuit City Compl. (No. 11-cv-05502-SC (N.D. Cal.)) [Dkt No. 1] at ¶¶ 87-91, 128, 214-221; Polaroid Compl. (11-cv-05381 (N.D. Cal.)) [Dkt No. 1] ¶¶ 101, 120, 184-185, 199.

- The DAPs have "paid more for CRT Products than they otherwise would have paid in the absence of the unlawful conduct of Defendants."[7]

- "The market for CRTs and the market for the products into which they are placed are inextricably linked and intertwined because the CRT market exists to serve the CRT Products markets. The markets for CRTs and CRT Products are, for all intents and purposes, inseparable in that one would not exist without the other."[8]

- "CRTs have no independent utility, and have value only as components of other products, such as TVs and computer monitors. The demand for CRTs thus directly derives from the demand for such products."[9]

- "CRTs are identifiable, discrete physical objects that do not change form or become an indistinguishable part of a CRT Product."[10]

- CRTs remain "essentially unchanged as [they] move through the distribution system" and "follow a physical chain from Defendants through manufacturers of CRT Products sold to Plaintiffs."[11]

- "OEMs and others passed on to their customers, including [the DAPs], the overcharges caused by Defendants' conspiracy."[12]

The DAPs' allegations are more than sufficient to demonstrate that their purchases of CRT Products resulted in antitrust injury.  Thus, the Court should reject Defendants' argument here, just as it did in the IPP action.

The Special Master recommends a different outcome in the DAP actions based on the premise that the Court's decision in the IPP action relied on allegations that Defendants conspired to fix the prices of both CRTs *and* CRT Products, whereas the DAPs do not allege a conspiracy to fix the prices of CRT Products.  R&R at 10-11.  That premise is false because the Court's analysis did not rely on allegations that the CRT products the IPPs purchased were

---

[7] *E.g.*, Electrograph Compl. ¶ 222; *see also* CompuCom Compl. ¶ 208; Costco Compl. ¶ 159; Office Depot Compl. ¶ 207; P.C. Richard Compl. ¶ 212; Circuit City Compl. ¶ 214; Polaroid Compl. ¶ 185.

[8] Electrograph Compl. ¶96; CompuCom Compl. ¶86; Costco Compl. ¶69; Office Depot Compl. ¶85; P.C. Richard Compl. ¶90; Circuit City Compl. ¶88.

[9] Electrograph Compl. ¶95; CompuCom Compl. ¶85; Costco Compl. ¶69; Office Depot Compl. ¶84; P.C. Richard Compl. ¶89; Circuit City Compl. ¶87.

[10] Electrograph Compl. ¶226; CompuCom Compl. ¶212; Costco Compl. ¶70; Office Depot Compl. ¶211; P.C. Richard Compl. ¶216; Circuit City Compl. ¶218.

[11] *Id.*

[12] Electrograph Compl. ¶225; CompuCom Compl. ¶211; Costco Compl. ¶184; Office Depot Compl. ¶210; P.C. Richard Compl. ¶215; Circuit City Compl. ¶217; *see also* Polaroid Compl. ¶120 ("Defendants ensured that price increases for CRTs were passed on to indirect purchasers of CRT Products.").

themselves price-fixed.  Rather, as noted above, the Court's antitrust standing analysis was based on allegations that the markets for CRTs and CRT Products were inextricably linked and intertwined.  *CRT*, 738 F. Supp. 2d at 1023-24.

Courts in this district, including this one, have rejected the Special Master's overly narrow and wooden definition of the relevant market, especially where the allegations show that the finished product market and the component product market are inextricably linked and intertwined.  Indeed, the Special Master's recommendation is in conflict with multiple Northern District of California decisions, all of which have relied on the "inextricably linked and intertwined" markets standard.[13]

Most recently, in *LCD*, Judge Illston denied a motion for summary judgment in certain DAP actions,[14] noting that the DAPs had presented evidence that "the markets for LCD products . . . and LCD panels are inextricably linked; that LCD panels are discrete components of LCD products; that they have no independent utility; and that almost no demand exists for them outside of the demand for LCD products."  *LCD II*, 2012 WL 4808447, at *2.  Judge Illston also noted that she had denied Defendants' motion to dismiss and motion for summary judgment in the indirect purchaser plaintiff (IPP) action in LCD on the basis of similar allegations and evidence, respectively.  *See LCD I*, 586 F. Supp. 2d at 1123 (denying motion to dismiss IPP state law claims on *AGC* grounds); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827 SI, 2011 WL 6148677, at *2 (N.D. Cal. Dec. 7, 2011) (denying motion for summary judgment on *AGC* grounds).  Judge Illston thus held that just "[as she] found in the IPP class case, it is appropriate to analyze the LCD product and panel markets together" in the DAP actions.  *LCD II*, 2012 WL 4808447, at *2.[15]

---

[13] *See also Blue Shield of Va. v. McCready*, 457 U.S. 465, 483-84 (1982) (although plaintiff "was not a competitor of the conspirators, the injury she suffered was inextricably intertwined with the injury the conspirators sought to inflict" on the market).  An injury "inextricably intertwined" with the injury inflicted on the market "falls squarely within the area of congressional concern."  *Id.* at 484, n.11.

[14] Certain of the DAPs at issue in *LCD* are the same DAPs at issue here, namely Best Buy, Costco, Electrograph, and Target.

[15] *Accord Optical Disk Drive*, 2011 WL 3894376, at *12 ("As explained in more detail in *TFT–LCD,* this is both because 'it is inappropriate to broadly apply the *AGC* test to plaintiffs' claims under the repealer states' laws in the absence of a clear directive from those states' legislatures or

Likewise, in *Flash Memory*, Judge Armstrong rejected defendants' argument "that the alleged anticompetitive conduct occurred only in the market for *direct* purchasers of NAND flash memory, which is different than for *indirect* purchasers where the relevant market ostensibly is defined by where the particular product containing flash memory is sold." *Flash Memory*, 643 F. Supp. 2d at 1153. Judge Armstrong was persuaded by the indirect purchasers' allegations that regardless of whether flash memory was purchased as "a stand-alone item or incorporated as a central component of finished products" it "provides essentially the same functionality," and that "while the markets for NAND flash memory and products that contain NAND flash memory technically may be different, in practice, both markets are inextricably intertwined and there is inherent cross-elasticity of demand between the two." *Id.* at 1154. Based on those allegations, she found that plaintiffs "alleged sufficient facts to show that they are market participants for purposes of *AGC*." *Id.*

Similarly, in *GPU II*, the defendants argued that plaintiffs could not satisfy the first *AGC* factor because they bought computers containing graphics processing units (GPUs) rather than standalone GPUs, and thus did not participate in the relevant market. *GPU II*, 540 F. Supp. 2d at 1098. Judge Alsup found that although "Plaintiffs who bought finished computers participated in the market for finished computers, not for GPUs," this fact was not determinative. *Id.* Rather, Judge Alsup considered the relationship between the GPU market and computer market and found that, among other things, "GPUs are separate components of a computer and that any costs attributable to them are traceable through the chain of distribution." *Id.* Thus, he rejected defendants' argument and found that "this [*AGC*] factor slightly favors standing." *Id.*[16]

highest courts,' and because even if the *AGC* test were to be applied, it does not conclusively rule out standing, at least at the pleading stage, on facts like those present here.") (*quoting LCD I*, 586 F. Supp. 2d at 1122-23) (*dismissing claims on other grounds with leave to amend*).

[16] The Special Master relied on *DRAM* to support his recommendation. As noted above, however, the *DRAM* decisions have been repeatedly rejected by other courts to consider these issues. *See Optical Disk Drive*, 2011 WL 3894376, at *12; *LCD I*, 586 F. Supp. 2d at 1122-23; *Flash Memory*, 643 F. Supp. 2d at 1153; *GPU I*, 527 F. Supp. 2d at 1026. Moreover, the products at issue in *DRAM* make it distinguishable from CRTs and CRT televisions and monitors. DRAM memory chips are just one of "numerous other components" found in the wide variety of electronic products that contain DRAM. *DRAM I*, 516 F. Supp. 2d at 1092. Here, Plaintiffs have alleged that CRTs are the primary component of CRT televisions and monitors. *E.g.* Electrograph Compl. ¶92 ("The quality of a CRT itself determines the quality of the CRT display. No external control or feature can make up for a poor quality tube. In this regard, the

1    Thus, the DAPs have unquestionably satisfied the first factor of the *AGC* test.  Although

2    not considered by the Special Master, the DAPs' claims also satisfy each of the remaining *AGC*

3    factors.

4         **2.   The DAPs' Injuries Are Direct.**

5         The DAPs' allegations demonstrate that their injuries are sufficiently direct under the

6    second *AGC* factor.  The directness factor looks to whether a plaintiff's injury was the direct

7    result of the defendants' anticompetitive activity.  *Am. Ad Mgmt.*, 190 F.3d at 1058.  Directness

8    is assessed by "look[ing] to the chain of causation between [Plaintiffs'] injury" and Defendants'

9    unlawful conduct.  *Id.* (citing *AGC*, 459 U.S. at 540; *Yellow Pages Cost Consultants, Inc. v. GTE*

10   *Directories Corp.*, 951 F.2d 1158, 1162 (9th Cir. 1991) ("Directness in the antitrust context

11   means close in the chain of causation.")).

12        At the pleading stage, allegations that the CRT is a discrete component and its price is

13   traceable through the distribution chain are sufficient.  *See GPU II*, 540 F. Supp. 2d at 1098

14   ("plaintiffs have pleaded that the price of the GPU is traceable, so this factor favors standing");

15   *LCD*, 586 F. Supp. 2d at 1123-24 (finding the second *AGC* factor met because "plaintiffs have

16   sufficiently alleged that the price of LCD panels is traceable").[17]  Here, the DAPs have alleged

17   that:

18        • "CRTs are identifiable, discrete physical objects that do not change form or
            become an indistinguishable part of a CRT Product."[18]
19

20        • CRTs remain "essentially unchanged as [they] move through the distribution
            system" and "follow a physical chain from Defendants through manufacturers
            of CRT Products sold to Plaintiffs."[19]
21

22        •  "OEMs and others passed on to their customers, including [the DAPs], the

23   CRT defines the whole CRT product so that the product is often simply referred to as 'the
     CRT.'"); CompuCom Compl. ¶82; Costco Compl. ¶66; Office Depot Compl. ¶81; P.C. Richard
24   Compl. ¶86; Circuit City Compl. ¶84; Polaroid Compl. ¶84.
     [17] *Cf. DRAM I*, 516 F. Supp. 2d at 1092 (directness factor weighed against standing where
25   plaintiffs "set[] forth no allegations that demonstrate that, within the final purchase price of a
     given product purchased by plaintiffs for 'end use,' the ultimate costs of the DRAM component
26   is somehow directly traceable and/or distinguishable").
     [18] Electrograph Compl. ¶226; CompuCom Compl. ¶212; Costco Compl. ¶70; Office Depot
27   Compl. ¶211; P.C. Richard Compl. ¶216; Circuit City Compl. ¶218; *see also* Polaroid Compl.
     ¶120 ("Defendants ensured that price increases for CRTs were passed on to indirect purchasers
28   of CRT Products.").
     [19] *Id.*

overcharges caused by Defendants' conspiracy."[20]

These allegations weigh in favor of standing because they demonstrate the traceability of CRTs and their prices through the distribution chain in which the DAPs purchased CRT Products.

### 3. The DAPs' Injuries Are Not Speculative.

The third *AGC* factor – whether damages are speculative – simply serves the purpose of ensuring that a reasonable basis exists for determining damages. "Complex antitrust cases . . . invariably involve complicated questions of causation and damages." *Am. Ad Mgmt.*, 190 F.3d at 1059 (finding that while ascertaining the amount of plaintiff's damages is complicated, "this complexity is not so unusual as to distinguish this case from other complex business disputes").

The DAPs have sufficiently alleged that the overcharges on CRTs paid by OEMs were passed on to the DAPs in the prices they paid for CRT Products.[21] Moreover, as discussed above, the DAPs have alleged that CRTs are identifiable, discrete physical objects that "follow a physical chain from Defendants through manufacturers of CRT Products sold to Plaintiffs," which is sufficient to avoid dismissal.[22] *Flash Memory*, 643 F. Supp. 2d at 1155; *see also LCD I*, 586 F. Supp. 2d at 1124 (finding that "plaintiffs have sufficiently alleged that overcharges are passed on to consumers, and that such overcharges can be traced through the relatively short distribution chain"). Thus, the DAPs' allegations demonstrate that the damages sought are not speculative and satisfy the third AGC factor.

### 4. There Is Not A Risk of Duplicative Recovery and An Apportionment of Damages Will Not be Unduly Complex.

The DAPs have also satisfied the remaining two *AGC* factors. First, duplicative recovery concerns "generally [are] inapposite in the context of indirect purchaser state law antitrust

---

[20] Electrograph Compl. ¶225; CompuCom Compl. ¶211; Costco Compl. ¶184; Office Depot Compl. ¶210; P.C. Richard Compl. ¶215; Circuit City Compl. ¶217; *see also* Polaroid Compl. ¶120 ("Defendants ensured that price increases for CRTs were passed on to indirect purchasers of CRT Products.").

[21] *E.g.* Electrograph Compl. ¶¶136, 224-225; CompuCom Compl. ¶¶136, 210-211; Costco Compl. ¶¶108,157-159, 183-84; Office Depot Compl. ¶¶125, 209-210; P.C. Richard Compl. ¶¶130, 214-215 ; Circuit City Compl. ¶¶128, 216-217; Polaroid Compl. ¶¶120; 184-184, 199.

[22] Electrograph Compl. ¶226; CompuCom Compl. ¶212; Costco Compl. ¶70; Office Depot Compl. ¶211; P.C. Richard Compl. ¶216; Circuit City Compl. ¶218; *see also* Polaroid Compl. ¶120 ("Defendants ensured that price increases for CRTs were passed on to indirect purchasers of CRT Products.").

claims." *Flash Memory*, 643 F. Supp. 2d at 1156.  Even *DRAM*, upon which Defendants rely, recognizes this:

> States . . . which have repealed *Illinois Brick* and allowed indirect purchasers to sue for antitrust violations, or [] have necessarily made the policy decision that duplicative recovery may permissibly occur.  Duplicative recovery is, in many if not all cases alleging a nationwide conspiracy with both direct and indirect purchaser classes, a necessary consequence that flows from indirect purchaser recovery.  Accordingly, it is no bar against standing, and this factor does not weigh against standing.

*DRAM I*, 516 F. Supp. 2d at 1093.

Likewise, the DAPs' allegations that CRTs remain discrete and identifiable through the distribution chain and that overcharges have been passed-on to them[23] are "sufficient for purposes of avoid[ing] dismissal." *Flash Memory*, 643 F. Supp. 2d at 1155.

If the Special Master had correctly conducted the balancing test, he would have found that, as in the IPP action, all of the factors favor the DAPs, who have more than met the pleading requirements under *AGC*.  As such, the Court should deny Defendants' motion to dismiss.

## II.   THE DAPS HAVE STATED CLAIMS UNDER THE MASSACHUSETTS CONSUMER PROTECTION ACT

The Special Master erred when he dismissed the DAPs' claims, *without leave to amend*, under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A § 2.  The Special Master recommended dismissal on the ground that the DAPs have "failed to comply with the written demand [to Defendants] for relief prior to the filing of their actions required by statute in Massachusetts" and further stated that "this issue has been before Your Honor at least twice before, and Your Honor dismissed the earlier claims for failure to comply with the specific requirements of the statute regarding pre-filing notice." R&R at 12.  These statements are simply incorrect.  The DAPs *did* send written demands to each Defendant, or were not required to do so under the statute.  Moreover, this Court has never ruled substantively on this issue, let alone twice in this litigation.  And finally, even if the Court were to find a procedural defect in the DAPs' filing of their Massachusetts claims, the proper remedy is dismissal *with leave to amend*.

---

[23] *E.g.* Electrograph Compl. ¶¶224-226; CompuCom Compl. ¶¶210-212; Costco Compl. ¶¶70, 108, 157-159, 183-84; Office Depot Compl. ¶¶209-211; P.C. Richard Compl. ¶¶214-216; Circuit City Compl. ¶¶128, 216-218; Polaroid Compl. ¶¶120, 184-184, 199.

First, as the DAPs asserted in their opposition to Defendants' joint motion to dismiss, they were not required to make a demand of most of the Defendants in this action because, of the 39 defendants, at most *two* maintain a place of business in Massachusetts and only four others are registered to do business in Massachusetts. *See* May 31, 2013 Declaration of Philip J. Iovieno ("Iovieno Decl."), at ¶¶ 8-9. This is crucial because under the Massachusetts Consumer Protection Act, there is an exception to the pre-litigation demand requirement when "the prospective respondent does not maintain a place of business or does not keep assets[24] within the commonwealth." M.G.L.A. 93A, § 9(3); *Williams v. Perrault*, 82 Mass. App. Ct. 1117, 976 N.E.2d 214 (Table) (2012) (holding that plaintiff was not required to make pre-litigation demand of company that did not maintain a place of business or keep assets in Massachusetts); *In re Mitchell*, 476 B.R. 33 (Bankr. Mass. 2012) (same); *see also Paisley v. GMAC Mortg., LLC*, No. PLCV201001077B, 2011 WL 1663092, at *1 (Mass. Super. Feb. 25, 2011). The only Defendants that maintain a place of business in Massachusetts, according to the Massachusetts Secretary of State, are Toshiba America Electronic Components, Inc. ("TAEC") and Philips Electronics of North America Corporation ("PENAC"). Aside from TAEC and PENAC, only four other Defendants are even legally registered to do business in the Commonwealth, according to the Massachusetts Secretary of State: Hitachi America, Ltd; LG Electronics, USA; Panasonic Corporation of North America; and Toshiba America Information Systems, Inc. *See* Iovieno Decl. at ¶¶ 2-9 and Exhibits A-F thereto. Thus, with respect to all of the other defendants that do not maintain a place of business in Massachusetts, and are not even registered to do business there, there is no requirement that plaintiffs make a demand at all and the Special Master's dismissal of those defendants was clearly erroneous. *See Powell v. Ocwen Loan Servicing, LLC*, No. 2010-2069-D, 2012 WL 345665, at *4 (Mass. Super. Ct. January 04, 2012) (denying motion to dismiss claim for failure to send a demand letter when defendant failed to rebut contention that it did not maintain a place of business in Massachusetts).

---

[24] Plaintiffs also have no evidence that any of the Defendants have assets in the Commonwealth. The burden is on Defendants to show that they *do* have such assets. *Butler v. Deutsche Bank Trust Co. Americas*, 2012 WL 3518560, at *12-*13 (D. Mass. August 14, 2012) (refusing to dismiss claim "for failure to satisfy the demand letter requirement" because Defendant could not show at the motion to dismiss stage that it held assets in the state).

Furthermore, the DAPs *did* issue demand letters[25] to all of the Defendants prior to filing their complaints on November 14, 2011, including the two that maintain a place of business in Massachusetts and the other four that are registered to do business in Massachusetts.   The Defendants never responded.  Though the DAPs' demands were made with less than the 30 days notice called for in the statute, this is not fatal to a 93A claim under Massachusetts law.  In fact, multiple cases have refused to dismiss 93A claims despite technical non-compliance with the 30 day period.  *See Burns ex rel. Office of Public Guardian v. Hale & Dorr LLP*, 445 F. Supp. 2d 94, 96-97 (D. Mass. 2006) (concluding that plaintiff's demand letter "was adequate and satisfied the purpose of the demand requirement" where plaintiff "did not send a demand letter to defendants prior to filing her initial complaint," but did "send a letter . . . which preceded the filing of defendants' answer . . . as well as her amended complaint"); *see also McKensi v. Bank of Am., N.A.,* No. 09-cv-11940, 2010 WL 3781841, at *3 (D. Mass. Sept. 22, 2010) ("While it would have been more appropriate to commence the action, wait the 30 days and then move to amend to add the ch. 93A claim, [defendant] has cited no cases and none have been found where the premature filing of a complaint constitutes a waiver of a plaintiff's right to assert a 93A action. Since the demand letter was served, the Bank has had ample opportunity to assess the merits of the plaintiff's claim and make a settlement offer if appropriate. The timing of the suit is not a basis to dismiss the 93A claim.").

Moreover, the Special Master's assertion that he was following the Court's two prior rulings on this issue (in the IPP action) in recommending the dismissal of the DAPs' Massachusetts claim is simply in error – *no such ruling exists*.  While the Special Master twice recommended that the IPPs' Massachusetts law claim be dismissed,[26] the Court has never substantively analyzed a motion to dismiss a Massachusetts Consumer Protection Act claim in this litigation.  The IPPs did not object to the Special Master's first recommendation that their

---

[25] *See* Declaration of Philip J. Iovieno in Support of Direct Action Plaintiffs Opposition to Defendants' Joint Motion to Dismiss and For Judgment on the Pleadings and exhibits thereto.

[26] *See* Report, Recommendations and Tentative Rulings Regarding Defendants' Motions to Dismiss [Dkt No. 597] (Feb. 5, 2010), at 29-30 ("Feb. 5, 2010 R&R").   *See* Report, Recommendations and Tentative Rulings Regarding Defendants' Joint Motion to Dismiss the Second Consolidated Amended Complaint of the Indirect Purchaser Plaintiffs [Dkt. No. 768] (*Sept. 30, 2010), at 12 ("Sept. 30, 2010 R&R").*

Massachusetts claim be dismissed with leave to replead and, for that reason, the Court adopted the Special Master's recommendation, rather than engaging in a substantive analysis of the issue.[27] After the Special Master again recommended the dismissal of the IPPs' Massachusetts claim,[28] the parties entered into a stipulation agreeing that, except for certain modifications not relevant here, "the Special Master's Report shall be adopted in full as the Order of this Court," and the Court subsequently entered the stipulation.[29] Thus, the Court has never issued a substantive ruling on the viability of a Massachusetts Consumer Protection Act claim in this litigation.  Moreover, the DAPs are differently situated from the IPPs, such that the Special Master's previous recommendations in the IPP action should not apply.  Specifically, as discussed above, the demands were not necessary for at least 37 of the 39 Defendants and, in any event, the DAPs made demands of all Defendants.

In any event, any supposed defect in the DAPs' pleadings caused by their failure to reference the demand letters is not a sound basis for dismissing the DAPs' claims under the Massachusetts Consumer Protection Act, especially without giving the DAPs a chance to amend the Complaint.  Indeed, if the Court determines to dismiss the DAPs' Massachusetts claims, they should be dismissed without prejudice and with leave for the DAPs to replead.

---

[27] *See* Order Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings re: Defendants' Motions to Dismiss [Dkt No. 665] (Mar. 30, 2010), at 23-24.

[28] The Special Master relied on only one case in either of his recommendations in the IPP action, *Kanamaru v. Holyoke Mut. Ins. Co.*, 72 Mass. App. Ct. 396, 407-408, 892 N.E.2d 759 (2008). *See* Sept. 30 2010 R&R at 13.  But *Kanamaru* is distinguishable because, while the Plaintiff there sent a demand letter for a 93A claim, the letter he sent to the defendants before the suit specifically stated that he was *not* going to file a 93A claim.  *Kanamaru*, 72 Mass. App. Ct. at 407-408.  When the objective of the demand statute is, in part, fair notice, as the Special Master noted in his Sept. 30, 2010 R&R, reliance here on a case involving a plaintiff who informed the defendants he was *not* bringing a 93A claim is improper, especially because Plaintiffs here *did* send demand letters outlining the nature of their 93A claims.
     By contrast, all of the cases cited by the DAPs above are directly on point, especially *McKensi*, and they all post-date *Kanamaru*.  These cases are therefore the most accurate and recent statements of Massachusetts law on the issue.

[29] *See* Stipulation and Order Modifying and Adopting the Special Master's Report, Recommendations and Tentative Rulings Regarding Defendants' Joint Motion to Dismiss the Second Consolidated Amended Complaint of the Indirect Purchaser Plaintiffs [Dkt. No. 799] (Oct. 27, 2010), at 2.

### III.   THE DAPS HAVE STATED CLAIMS UNDER THE WASHINGTON CONSUMER PROTECTION ACT

The Court should reject Special Master Legge's recommendation that "the complaints asserted under Washington law be dismissed without leave to amend." R&R at 12.  The parties agree and the Special Master acknowledges that Washington courts generally follow federal court interpretations of the *Illinois Brick* rule.  *See id.*  Just as Costco's federal claims survive Defendants' challenge under *Illinois Brick*, *id.* at 4-5, so too do the parallel Washington claims. Accordingly, the Court should hold that Costco has standing to pursue claims under the Washington Consumer Protection Act to the extent Costco satisfies an exception to *Illinois Brick*.  The Court should further clarify that its ruling has no bearing on the Washington Attorney General's right to pursue indirect purchaser claims nor on Costco's ability to recover pursuant to the Attorney General's action.

### IV.   THE POLAROID PLAINTIFFS HAVE ADEQUATELY ALLEGED UNJUST ENRICHMENT CLAIMS UNDER MINNESOTA AND CALIFORNIA LAW

The Special Master recommends dismissing the Polaroid Plaintiffs' claim for unjust enrichment with leave to amend the Complaint to allow the Polaroid Plaintiffs "to identify what states' laws they are relying upon to allege a claim for unjust enrichment." (R&R at p. 13.)  But the Special Master based this recommendation on the errant conclusion that "Plaintiffs have not alleged the unjust enrichment laws of any particular state." (R&R at p. 12.)

The Polaroid Plaintiffs' Complaint specifically identifies Minnesota and California as the two states' laws from which their claims arise.  (*See* Polaroid Plaintiffs' Compl. ¶¶ 5, 8-9, 11 (alleging Defendants' purposefully availed themselves of Minnesota and California state laws and caused injury in Minnesota and California, and stating Plaintiffs' claims arise under Minnesota and California state laws); *see also id.* ¶¶ 188-211 (stating claims under Minnesota and California state laws).)  The Polaroid Plaintiffs also specifically plead violations under Minnesota and California statutory laws.  (*See id.* at ¶¶188-211 (alleging violations of Minnesota's Antitrust Statute, the California Cartwright Act, and the California Unfair Competition Statute).)

All of the allegations set forth in the Complaint, including those cited above, are

incorporated into the Polaroid Plaintiffs' claim for unjust enrichment.  (*See* Polaroid Plaintiffs'

Compl. ¶ 212.)  Accordingly, the Polaroid Plaintiffs have sufficiently pled that their common law

claim for unjust enrichment arises under Minnesota and California state laws, and is not subject

to dismissal for failure to identify a particular state.  *See* Fed. R. Civ. P. 8(a)(2) (notice pleading

requires a "short and plain statement of the claim"); *see also Fontana v. Haskin*, 262 F.3d 871,

877 (9th Cir. 2001), citing *Am. Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 786 (9th

Cir.1982) ("Specific legal theories need not be pleaded so long as sufficient factual averments

show that the claimant may be entitled to some relief.")

It is of no consequence that Minnesota and California are not specifically enumerated in

the Polaroid Plaintiffs' claim for unjust enrichment.  The Complaint makes clear that the only

state laws under which the Polaroid Plaintiffs seek relief for Defendants' unjust enrichment are

Minnesota and California.  To require the Polaroid Plaintiffs to amend their Complaint to

explicitly include Minnesota and California in the fifth count of their Complaint would be

unnecessary and would elevate form over substance.  The Complaint very clearly satisfies Rule 8

and Rule 12(b)(6).  Accordingly, the Special Master's recommendation that the unjust

enrichment claim in the Complaint be dismissed without prejudice for repleading must be

rejected.

## V.   CIRCUIT CITY HAS ADEQUATELY ALLEGED RESTITUTION AND UNJUST ENRICHMENT CLAIMS UNDER CALIFORNIA LAW

The Special Master recommends dismissing Circuit City's claims for restitution and

unjust enrichment under California law.  Judge Illston addressed the exact same arguments in

*LCD*, denying the defendants' motion to dismiss Circuit City's California unjust enrichment

claims and holding that Circuit City "invoked a valid theory of recovery."  *In re TFT-LCD (Flat

Panel) Antitrust Litig.*, No. M 07–1827 SI, 2011 WL 4345435 at *3-4 (N.D. Cal., Sept. 15,

2011).

The Special Master recognizes that California appellate courts are split on the issue of

whether California law supports a "stand-alone" claim for unjust enrichment or restitution.

Judge Illston also recognized the split, but noted that "[m]any of the courts that have rejected

'unjust enrichment' claims have nonetheless indicated that the claims could proceed under a different title."[30]  *Id.* at *3.  The California Supreme Court came down on Circuit City's side of the split in *Ghirardo v. Antonioli*. 14 Cal. 4th 39, 54 (Cal. 1996) (holding that the cross-claimant adequately pleaded a cause of action for unjust enrichment).  In addition, the Ninth Circuit, California appellate courts, and federal district courts have recognized that unjust enrichment or restitution provides a valid claim for relief under California common law.  *See, e.g.*, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) ("California's approach to unjust enrichment is consistent with this general understanding: … 'The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it.'" (quoting *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992)); *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1180 (S.D. Cal. 2010) ("California courts permit a plaintiff to invoke the doctrine of unjust enrichment" and allowing unjust enrichment claim in addition to restitution claim); *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *4–5 (N.D. Cal March 30, 2009) ("Whether Plaintiffs' unjust enrichment cause of action is construed as a claim for restitution as in the *McBride* case or is considered to be an independent cause of action as in the *Lectrodryer* and *First Nationwide* cases, the allegations are sufficient to state a claim under California law."); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (Ct. App. 2008) ("The elements of an unjust enrichment claim are the receipt of a benefit and unjust retention of the benefit at the expense of another."); *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Ct. App. 2000)

---

[30]*See also Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) ("[F]or the most part, courts finding that California does not allow an 'unjust enrichment' cause of action have made essentially a semantic argument—focusing on the interrelationship between the legal doctrine of unjust enrichment and the legal remedy of restitution.").  Many cases holding that unjust enrichment is not a stand-alone claim under California law still recognize that a plaintiff may plead a cause of action seeking restitution, which Circuit City does.  *See, e.g.*, *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (Ct. App. 2011) (stating that "[c]ommon law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient"); *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (Ct. App. 2004) (construing the plaintiff's "purported cause of action for unjust enrichment as an attempt to plead a cause of action giving rise to a right to restitution," noting that "[t]here are several potential bases for a cause of action seeking restitution").

1   (affirming jury verdict on unjust enrichment claim).  Relying on this authority, Judge Illston held

2   that Circuit City's unjust enrichment claim "invoked a valid theory of recovery."  *LCD*, 2011

3   WL 4345435 at *4.

4        The Special Master nevertheless recommends dismissal of Circuit City's claims because

5   he finds that "California law provides specific remedies for antitrust violations in its Cartwright

6   Act, which are adequate remedies at law" and that "[t]here is no need to litigate equitable forms

7   of relief when the state's statute provides specific causes of action and forms of relief for the

8   facts alleged in these complaints."  However, this precise argument was rejected in *Keilholtz v.*

9   *Superior Fireplace Co.*, which held that "it is inappropriate at this early stage in the litigation to

10  determine whether other remedies available to Plaintiffs are adequate."  2009 WL 839076, at *5

11  (N.D. Cal March 30, 2009).  Similarly, Judge Illston allowed the exact same claims to proceed in

12  *LCD* without determining the adequacy of other remedies at the early motion to dismiss stage.

13  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435 at *3-4 (N.D. Cal., Sept. 15,

14  2011).  Accordingly, the Court should follow Judge Illston's holding in *LCD* and the *Keilholtz*

15  case and uphold Circuit City's unjust enrichment/restitution claim under California law.

16  **VI.   RECENT DECISIONS BY JUDGES IN THIS DISTRICT HAVE ALLOWED**
17  **INDIRECT PURCHASER CLAIMS UNDER NEBRASKA AND NEVADA LAW**
    **FOR PURCHASES THAT PREDATE THE SO-CALLED *ILLINOIS BRICK***
18  **REPEALER STATUTES IN THESE STATES.**

19       The Special Master, through inadvertence or oversight, failed to consider two recent

20  decisions by Judges in this District determining that indirect purchasers may bring claims under

21  Nebraska and Nevada law for purchases that predate the so-called *Illinois Brick* repealer statutes

22  in these states.  In ruling that these claims cannot go forward, the Special Master relied on a prior

23  ruling in this case where a similar motion was brought against claims asserted by the IPPs.

24  Significantly, the IPPs did not challenge the Special Master's ruling in that instance and the

25  Court, not having to address any objections to this ruling, adopted the ruling without further

26  review.[31]  In the Report and Recommendation now being challenged, the Special Master stated

27

28  _____
    [31] *See CRT,* 738 F.Supp.2d at 1025 ("The Indirect Purchaser Plaintiffs do not object to these
    rulings against them. . . . The Court therefore adopts the recommendation of the Special Master,
    and DISMISSES the claims under Nebraska law based on sales made prior to July 20, 2002 [and]

that the DAPs "have cited no new authority and have provided no new reasons why this Court should reverse its earlier holding." *See* R&R at 14.  In so doing, the Special Master overlooked two intervening cases holding otherwise from this District.  Those cases decided by Judges Wilken and Illston after the prior ruling in this case by the Special Master permitted indirect purchaser claims to stand for claims under Nebraska and Nevada law for purchases that were made prior to the amendments in those states clarifying the inapplicability of *Illinois Brick* to the state antitrust laws. *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. M07-1827 SI, 2011 WL 3738985, **3-4 (N.D. Cal. Aug. 24, 2011) (Illston, S.) (Nebraska) (denying motion to dismiss indirect purchasers' pre-2002 Nebraska claims; concluding that the Nebraska Supreme Court would likely hold that state antitrust act (Junkin Act) permitted indirect purchaser claims even before the 2002 amendment); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* No. 07-1819 CF, 2010 WL 5094289, *5 (N.D. Cal. Dec. 8, 2010) (Wilken, C.) (Nevada) (denying motion for partial summary judgment as to claims that predate 1999 amendment to Nevada statute; agreeing with a Nevada state district court's analysis that the repealer statute was simply a clarification of the law thus permitting indirect purchasers to state claims for conduct prior to 1999).

### A.    The DAPs Have Standing To Bring Claims Under Nebraska Law For Purchases That Predate Nebraska's *Illinois Brick* Repealer Statute.

Nebraska's antitrust statute permits "[a]ny person who shall be injured in his business or property" by an antitrust violation to bring suit for damages.  *See* Neb. Rev. Stat. §59-821 (2000).  In 2002, this statute was amended to permit suit by injured persons who dealt "directly or indirectly with the defendant." *See* Laws 2002, LB 1278, §26.  Persons injured by antitrust violations can also bring claims under the analogous Consumer Protection Act.  *See* Neb. Rev. Stat. §§ 59-1603, 59-1604, 59-1609.  That statute was also amended in 2002 to permit suit by injured persons who dealt "directly or indirectly with the defendant." *See* Laws 2002, LB 1278, §26.  The Nebraska Supreme Court has held that indirect purchasers have standing to bring antitrust claims under the related Consumer Protection Act for purchases made *prior* to the 2002

Amendment.  *See Arthur v. Microsoft Corp.,* 267 Neb. 586 (Neb. 2004) (reversing dismissal of indirect purchaser claims under the Consumer Protection Act).  Certainly it would follow that the same type of claims brought by indirect purchasers under the Antitrust Act for purchases made prior to the 2002 amendment would be allowed.[32]

In 2011, Judge Illston relied on *Arthur* to deny the defendants' motion to dismiss one of the indirect purchaser plaintiff's claims under the Antitrust Act based on purchases made prior to the 2002 amendment.  *See In re TFT-LCD,* 2011 WL 3738985 at **3-4.  The defendants in *TFT-LCD* argued that Nebraska courts generally do not give retroactive effect to substantive statutes.  Judge Illston, however, disagreed with the defendants' interpretation of the Antitrust Act.  Citing to the *Arthur* decision allowing indirect purchasers to bring pre-2002 Amendment claims under the Consumer Protection Act, Judge Illston denied the motion to dismiss, concluding that Nebraska Supreme Court would likely hold that the [Antitrust] Act permitted indirect-purchaser suits even before the 2002 amendment." *See id.* at *4.  Defendants here make the same argument that the defendants made in *TFT-LCD* and that Judge Illston rejected.  *See* Motion at 38-39 [Dkt. No. 1317].  Accordingly, for the reasons set forth in DAP's Opposition to Defendants' Motion to Dismiss [Dkt. No. 1384], as well as in the decisions cited above, the DAPs respectfully request that the Court deny Defendants' motion to dismiss DAPs' Antitrust Act claims based on purchases that predate the 2002 Amendment.

### B.    The DAPs Have Standing To Bring Claims Under Nevada Law For Purchases That Predate Nevada's *Illinois Brick* Repealer Statute.

Similarly, Nevada's Unfair Trade Practices Act ("NUPTA"), allows any person injured in his business or property to bring suit for damages resulting from, among other things, unlawful monopolies and conspiracies in restraint of trade or commerce.  *See* Nev. Rev. Stat. Ann. §§598A.010, 598A.210.  On October 1, 1999, NUPTA was amended to permit suit by persons injured "directly or indirectly" in their business or property.   Nev. Rev. Stat. Ann. §

---

[32] Indeed, the Nebraska Supreme Court has made clear that given the similarities in the legislative intent and statutory language of the Antitrust Act and the Consumer Protection Act, the standing requirements for an antitrust claim [brought] under the [Consumer Protection Act] should be the same as for an antitrust claim under the Junkin Act."  *Kanne v. Visa U.S.A. Inc.,* 723 N.W.2d 293, 301 (Neb. 2006).

598A.210(2).  The 1999 amendment, however, did not change the standing requirements for an antitrust claim brought under the NUPTA as that statute previously allowed and continues to allow suit by *any* injured person.  By allowing "*any* person injured by a violation of the act" to bring an action, the plain language of the statute does not suggest any legislative intent to limit claims to claims by persons sustaining direct injuries.  The general rule is that civil statutes for the protection of the public are generally broadly construed in favor of that protective purpose.  *See Int'l Game Technology, Inc. v. Second Judicial Dist. Court ex rel. County of Washoe,* 179 P.3d 556 (Nev. 2008).   Indeed in 2001, a Nevada state court made clear that the 1999 amendment expressly included indirectly injured parties, clarified and reaffirmed the statute's original intent – allowing "*any* person injured by an alleged violation of the act" to sue.  *See Pooler v. R.J. Reynolds Tobacco Co.,* No. CV00-02674, 2001 WL 403167, at *1 (Nev.Dist.Ct.) (denying motion to dismiss antitrust claims brought under NUPTA for purchases made prior to the 1999 amendment) (emphasis added).

That the 1999 amendment was a mere clarification as opposed to a change in substantive law is also confirmed by foundational rules of statutory construction.  *See Harris Assoc. v. Clark County School District,* 81 P.3d 532, 534 (Nev. 2003) (courts look to the plain language of the statute when the words of the statute have a definite and ordinary meaning; courts construe statutes to give meaning to all of their parts and language; no part of a statute should be rendered meaningless and its language should not be read to produce absurd or unreasonable results).  In amending the statute, the Nevada legislature added the words "directly or indirectly" to the statute that already allowed "*any*" person injured to sue for a violation of the statute.   The 1999 amendment did not add language to now allow, for the first time, those injured indirectly to sue for a violation of the statute.  The legislature could have easily done so by adding language such as, for example, "including those injured indirectly."  Instead, the legislature made no distinction between direct and indirect parties when it employed language that references both direct and indirect parties on the same level without qualification.  To give meaning to all of the words of the amendment, as fundamental rules of statutory construction mandate, there could only be two permissible constructions:  (1) neither direct *nor* indirect parties had the right to bring an action

1    prior to the amendment; or (2) both direct *and* indirect parties had the right to bring an action

2    prior to the amendment and the amendment merely clarified this right.  To read the statute any

3    way other than the latter defies logic and gives meaning to some words in the amendment but not

4    to others.   Indeed, because claims by directly-injured parties were already allowed under

5    NUPTA prior to the amendment, *see e.g., Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 808

6    F.Supp. 1464 (D. Nev. 1992) (antitrust claim brought by competitor under NUPTA for direct

7    injury), the amendment can only be seen as a clarification of existing law.

8        In December 2010, Judge Wilken adopted the *Pooler* court's reasoning in *SRAM* when

9    she denied the defendants' motion for partial summary judgment seeking to exclude liability for

10   any alleged price fixing that occurred before the 1999 amendment.  *See* 2010 WL 5094289 at *5.

11   The defendants in *SRAM* claimed that the 1999 amendment was to be applied prospectively only.

12   *See id.*   Judge Wilken, however, disagreed with the defendants' interpretation of the 1999

13   amendment, in light of the Pooler court's interpretation of the amendment as "simply a

14   clarification of the law."  *See id.*  Defendants here make the same argument that the defendants

15   made in *SRAM* and that Judge Wilken rejected.  *See* Motion at 39 (Dkt. 1317).  Accordingly, for

16   the reasons set forth in DAP's Opposition to Defendants' Motion to Dismiss (Dkt. 1384), as well

17   as in the decisions cited above, the DAPs respectfully request that the Court deny Defendants'

18   motion to dismiss DAPs' NUPTA claims for purchases that predate the 1999 (clarifying)

19   amendment.

20                                    **CONCLUSION**

21       For all of the foregoing reasons, Defendants' Motion should be denied.

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | |
| | DATED:  May 31, 2013 |
| 3 | |

DATED:  May 31, 2013

/s/        *Philip J. Iovieno*
William A. Isaacson
Jennifer Milici
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com
Email:  jmilici@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022
Email:  ssinger@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
10 North Pearl Street, 4th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:   (518) 434-0665
Email:  piovieno@bsfllp.com
Email:  anardacci@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and Counsel for Plaintiffs Electrograph Systems, Inc., Electrograph Technologies, Corp., Office Depot, Inc., Compucom Systems, Inc., Interbond Corporation of America, P.C. Richard & Son Long Island Corporation, Marta Cooperative of America, Inc., ABC Appliance, Inc., Schultze Agency Services LLC on Behalf of Tweeter Opco, LLC and Tweeter Newco, LLC*

/s/        *Roman M. Silberfeld*
Roman M. Silberfeld (SBN 62783)
David Martinez (SBN 193183)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800
Email:  RMSilberfeld@rkmc.com
Email:  DMartinez@rkmc.com

*Attorneys for Plaintiffs Best Buy Co., Inc, Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.*

1

*/s/       Kenneth S. Marks*
H. Lee Godfrey
Kenneth S. Marks

2

Jonathan J. Ross
Johnny W. Carter

3

David M. Peterson
SUSMAN GODFREY L.L.P.

4

1000 Louisiana Street, Suite 5100
Houston, Texas 77002

5

Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666

6

Email:  lgodfrey@sumangodfrey.com
Email:  kmarks@susmangodfrey.com

7

Email:  jross@susmangodfrey.com
Email:  jcarter@susmangodfrey.com

8

Email:  dpeterson@susmangodfrey.com

9

Parker C. Folse III
Rachel S. Black

10

Jordan Connors
SUSMAN GODFREY L.L.P.

11

1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000

12

Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883

13

Email:  pfolse@susmangodfrey.com
Email:  rblack@susmangodfrey.com

14

Email:  jconnors@susmangodfrey.com

15

*Attorneys for Plaintiff Alfred H. Siegel, as Trustee of the*
*Circuit City Stores, Inc. Liquidating Trust*

16

*/s/       David. J. Burman*
David J. Burman

17

Cori G. Moore

18

Nicholas H. Hesterberg
PERKINS COIE LLP

19

1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

20

Telephone:  (206) 359-8000
Facsimile:  (206) 359-9000

21

Email:  DBurman@perkinscoie.com
Email:  CGMoore@perkinscoie.com

22

Email:  NHesterberg@perkinscoie.com

23

*Attorneys for Plaintiff Costco Wholesale Corporation*

24

*/s/       Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)

25

CROWELL & MORING LLP
515 South Flower St., 40th Floor

26

Los Angeles, CA 90071
Telephone:  (213) 622-4750

27

Facsimile:  (213) 622-2690
Email:  jmurray@crowell.com

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Counsel for Plaintiff Target Corp.

/s/ Richard Alan Arnold
Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
Email: rarnold@knpa.com
Email: wblechman@knpa.com
Email: kmurray@knpa.com

Counsel for Sears, Roebuck and Co. and Kmart Corp.

/s/         Jessica L. Meyer
Jessica L. Meyer (SBN: 249064)
James M. Lockhart (*pro hac vice*)
James P. McCarthy (*pro hac vice*)
Kelly G. Laudon (*pro hac vice*)
Lindquist & Vennum P.L.L.P.
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:  (612) 371-3211
Facsimile:   (612) 371-3207
Email:  jmeyer@lindquist.com
Email:  jlockhart@lindquist.com
Email:  jmccarthy@lindquist.com
Email:  klaudon@lindquist.com

Attorneys for Plaintiffs John R. Stoebner, as Chapter 7
Trustee for PBE Consumer Electronics, LLC and related
entities; and Douglas A. Kelley, as Chapter 11 Trustee for
Petters Company, Inc. and Related Entities, and as Receiver
for Petters Company, LLC and related entities